UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MARY E. JOHNSON,

                              Plaintiff,

      v.                                       **DECISION AND ORDER**
                                                        12-CV-1032S

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.


      1.      Plaintiff Mary E. Johnson challenges an Administrative Law Judge's ("ALJ") decision, dated March 16, 2011, wherein the ALJ determined that Plaintiff was not disabled under section 1614(a)(3)(A) of the Social Security Act. Plaintiff protectively filed an application for supplemental security income on July 28, 2009, alleging disability beginning on that date. She now contends that the ALJ's determination is not based upon substantial evidence, and reversal is warranted.

      2.      Plaintiff's application for supplemental security income was initially denied on October 20, 2009. Plaintiff requested a hearing on that denial, which was granted, and on February 8, 2011, she and a vocational expert testified before the ALJ. The ALJ issued a decision denying Plaintiff's application for supplemental security income on March 16, 2011, and the Appeals Council denied Plaintiff's request for review on August 30, 2012, rendering the ALJ's determination the final decision of the Commissioner. Plaintiff filed the instant action on October 25, 2012.

      3.      On June 21, 2013, both Plaintiff and the Commissioner filed Motions for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Judgment on the pleadings is appropriate where material facts are undisputed and where

a judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988).

4.  A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (internal quotation marks and citation omitted). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982), *cert denied*, 459 U.S. 1212 (1983).

5.  To determine whether the ALJ's findings are supported by substantial evidence, "a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and will not substitute "its own judgment for that of the [Commissioner], even if it might

justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

7. This five-step process is detailed below:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

8. While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step of this inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education and work

experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460-61, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9. In this case, the ALJ made the following findings with regard to the five-step process set forth above: (1) Plaintiff had not engaged in substantial gainful activity since July 28, 2009, her protective filing date (R. 24);[1] (2) Plaintiff had the following severe impairments: depressive disorder and adjustment disorder with mixed anxiety and depressed mood (R. 24); (3) Plaintiff did not have an impairment or combination of impairments that met or medically equaled a recognized disabling impairment under the regulations (R. 24-25); (4) Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but had the following nonexertional limitations: no more than simple, routine, low stress tasks and limited contact with the public and coworkers (R. 26-28); and (5) although Plaintiff had no past relevant work, she had the capacity to perform certain jobs, such as housekeeping cleaner, garment sorter, or line bakery worker (R. 28-29).

10. Plaintiff first argues that the ALJ's RFC finding is not supported by substantial evidence because the ALJ failed to consider exertional limitations in his RFC assessment and further failed to develop the record by seeking the opinion of Plaintiff's treating physicians on such limitations. The ALJ concluded, however, that Plaintiff suffered no severe exertional limitation, and this finding is supported by the absence of any objective evidence in the record of such a limitation. Indeed, the references in Plaintiff's brief to her

---

[1] Citations to the underlying administrative record are designated as "R."

inability to stand for more than 20 minutes or her arthritis pain medication reflect only self-reports of exertional limitations made to mental health examiners, not objective findings of physical limitations. (R. 279, 336-337; Pl's Mem of Law at 9.) Thus, there was no need for the ALJ to expressly consider exertional limitations in the RFC assessment. <u>Johnson v. Astrue</u>, 811 F. Supp. 2d 618, 628 (E.D.N.Y. 2011). Further, there is nothing that would indicate that the record was underdeveloped with respect to exertional limitations and further information would be available from a treating source. See <u>Rosa v. Callahan</u>, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (an ALJ has no obligation to seek additional information absent an obvious gap in the administrative record).

11. Plaintiff further argues that the ALJ failed to give appropriate weight to the opinion of Plaintiff's treating counselor, Elaine Liu, LMSW. Liu opined that Plaintiff had a ten-year history of mental health issues and was unable to function in a workplace environment due to hyper-vigilance, paranoia and some psychosis related to severe trauma. (R. 478.) Liu indicated by way of a preprinted checklist that Plaintiff was markedly impaired in her ability to, among other things, get along with coworkers without distracting them or exhibiting behavioral extremes; ability to maintain a regular schedule; and her ability to accept instructions and respond appropriately to criticism. (R. 478.) The ALJ gave this opinion "little weight" because Liu was "not an acceptable medical source and her opinion is not supported by contemporaneous treatment records." (R. 28.) The ALJ instead credited the "objective findings" of the consultative examiner, licensed psychologist Dr. Robert Hill, who found that Plaintiff's psychiatric problems were not "significant enough to interfere entirely with [Plaintiff's] ability to function on a daily basis." (R. 27.) Dr. Hill's opinion was given "significant weight" because "he had the opportunity to examine [Plaintiff] and his opinion is consistent with his objective findings and the psychiatric

evidence of record." (R. 27.)

Plaintiff correctly highlights that, although licensed social workers such as Liu are not "acceptable medical sources" for the purpose of establishing the existence of a medically determinable impairment, they are nonetheless "important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." SSR 06–03p, 2006 WL 2329939, at *2 (S.S.A. Aug. 9, 2006); Buck v. Colvin, No. 12-CV-857-JTC, 2014 WL 338841, *7 (W.D.N.Y. Jan. 30, 2014).  Factors to be considered in that evaluation include:

> [T]he nature and extent of the relationship between the source and the individual, the source's qualifications, the source's area of specialty or expertise, the degree to which the source presents relevant evidence to support his or her opinion, whether the opinion is consistent with other evidence, and any other factors that tend to support or refute the opinion.

SSR 06–03p, 2006 WL 2329939, at *5.  As the ALJ noted, however, Liu's checklist of marked and moderate impairments are unsupported by treatment notes or explanations, therefore the ALJ was unable to further consider Liu's opinion in light of the relevant factors. (R. 28, 475-478.) Further, Liu's brief statement that Plaintiff had a ten-year history of mental illness related to severe trauma appears contrary to treatment notes from Horizon Health reflecting no prior mental health treatment and increased symptoms of depression caused only recently by her mother's death. (R. 267, 272, 278, 478.)   Thus, in the absence of relevant evidence supporting Liu's opinion, it cannot be concluded that the ALJ erred in giving more weight to the opinion of Dr. Hill, an acceptable medical source (SSR 06–03p, 2006 WL 2329939, at *1), which the ALJ found consistent with Dr. Hill's described objective testing and the other psychiatric evidence in the record. (R. 27.)

12.     Contrary to Plaintiff's further argument, the ALJ's finding that Plaintiff's subjective complaints "are not credible to the extent they are inconsistent with the above

6

residual functional capacity assessment" (R. 26) does not demonstrate that the ALJ impermissibly conducted an RFC assessment prior to and separate from a credibility assessment. Instead, the ALJ specifically found that Plaintiff's subjective complaints were contradicted by her own prior reports as reflected in the medical records and her assistance application. (R. 27.) Further, the ALJ did not, as Plaintiff suggests, require a finding of criminal activity to credit her claimed "violent outbursts with friends and family members," but indicated that the absence of arrests or convictions rendered the alleged severity of these outbursts suspect. (R. 27.) Finally, although "[t]he SSA has stated that the GAF score 'does not have a direct correlation to the severity requirements in our mental disorders listings.' " Ortiz Torres v. Colvin, 939 F. Supp. 2d 172, 184 (N.D.N.Y. 2013) (quoting Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50,746, 50,764–65 (Aug. 21, 2000)), the ALJ did not rely solely on the contradiction between Plaintiff's complaints and her GAF score, but instead – as noted – also highlighted the contradiction with her own prior reports.

13. Because this Court finds no merit in Plaintiff's other contentions, her argument that the vocational expert's testimony was undermined by these errors also fails.

14. For the foregoing reasons, the Court concludes that the ALJ's determination is supported by substantial evidence. Defendant's Motion for Judgment on the Pleadings is granted.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 10) is DENIED;

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 9) is GRANTED;

FURTHER, that the Clerk of the Court is directed to take the necessary steps to

close this case.

    SO ORDERED.

Dated:  May 24, 2014
          Buffalo, New York

                                          /s/William M. Skretny
                                          WILLIAM M. SKRETNY
                                                Chief Judge
                                        United States District Court